Good morning. I'm Michelle Freedland from Munger, Tolles, and Olson, and I represent Mr. Palmer, the appellant in this matter. I would like to reserve three minutes of my time for rebuttal. This case turned on credibility determinations. The district court explicitly recognized that, and defendants do not dispute it. And the Seventh Amendment clearly gave Mr. Palmer the right to have a jury make those credibility determinations. Despite this, the district court made Mr. Palmer choose between presenting his absent witness' testimony and having a jury make those credibility determinations, putting Mr. Palmer to that choice was unconstitutional. There was absolutely no legitimate reason for the district court to condition waiver of the jury right on telephonic testimony. Well, let me ask you this. Why doesn't — I think we're familiar with the facts, but why doesn't this sort of fall under the no good deed goes unpunished saying in the sense that, you know, Mr. Palmer brought a lot of this upon himself by not — you know, he essentially didn't properly subpoena people. He also apparently for his own reasons and perhaps because of how the prisons work, he didn't want to compel, you know, he was given the opportunity to compel certain people to come in, but he didn't really want to do that. And so, you know, why — and, you know, here in terms of — and I believe that the district court initially, when he wasn't sure what he wanted to do, just said, fine, you know, I don't want to make you do anything, puts it over. And then he's the one that reinitiates the conversation. And obviously from the standpoint, you also have the backdrop — I mean, juries and bench trials are different. There's no two ways about that. And my understanding here is you have the one side that would not have agreed to allow that testimony in front of a jury over the telephone. And then you sort of — there's this next level in terms of Mr. Palmer basically if, you know, the argument being he brought it all upon himself. And then here he is at the point where the court probably would have been perfectly within its right to say, hey, go ahead, have your jury trial. No one's going to be here. You brought it all upon yourself and go down in flames. And then he basically, you know, the lights start going on with him. And he thinks like, well, I think I'd be better off if at least I, you know, can get people in by phone and do all of that. Why isn't that OK? OK. I have several responses because I think there are multiple. That's kind of the — that's sort of the down and dirty side of what Mr. — how Mr. Palmer contributed to this. OK. First, about Mr. Palmer's contribution, one thing that I want to make clear is that there was confusion about the date of the trial. So it isn't entirely clear that it was Mr. Palmer's fault. At excerpts of Record 16, there's a discussion about confusion over the date of the trial. The district court had moved the trial forward a week and never put on the docket that it had been moved back. And Mr. Palmer made clear to the court that his — the person who was assisting him, the investigator who was assisting him in getting the witnesses to come to the court, thought that the trial was still on February 7th and didn't know that it had been moved back to January 30th — 31st and that that was not on the docket. So that's one thing. But even if it were Mr. Palmer's fault and the district court was trying to do a good deed here, the unconstitutional conditions doctrine is about benefits, discretionary benefits that people do not have a right to. So even if Mr. Palmer was — if the district court was giving Mr. Palmer something that he really didn't deserve, there still was no reason for the district court to condition that benefit on waiver of a jury right. There's no relationship between waiver of a jury right and the benefit of telephonic testimony. In fact, the district court told Mr. Palmer on the first day when they discussed this issue at the pretrial conference, the district court told Mr. Palmer that juries had, quote, a right to see witnesses and that there would be no such barrier in a bench trial. But that was a misstatement of the law. Mr. Palmer had no way to know that because he didn't have an attorney. But the law gives juries no such right, and in fact, the law treats juries and judges the same in terms of — Kagan, your argument, your view is the district judge could have said no telephonic testimony and, you know, take your chances, you can have a bench trial or a jury trial, but that the judge can't pick and choose. You may have telephonic testimony, but no jury trial. That's right. The district court could have just said no, and then presumably Mr. Palmer would have had a jury trial. That's what he made clear he wanted. He was very clear from the beginning that he wanted a jury to make the credibility determinations that would decide the case. But that's a — But he wanted those witnesses there, right? He did want those witnesses. To testify. Yes. He did want the witnesses there, and he thought that that was more important than having a jury trial, which is why he made the waiver. But as the Supreme Court has made clear in many unconstitutional conditions cases, the fact that someone makes a choice doesn't mean that choice was valid. In fact, in this Court's decision, United States v. Scott, the Court held that the Fourth Amendment rights in return for pretrial release, this Court did not — held that that waiver was invalid. And Judge Callahan's opinion for the dissent from denial of rehearing in that case disagreed with the majority about whether there really was an invalid waiver in that case. But Judge Callahan's opinion agreed that the unconstitutional conditions doctrine would have prohibited the government from placing certain conditions on pretrial release. For example, the dissent said that if the — if the government conditioned pretrial release on waiver of First Amendment rights, that would be unconstitutional, because there is no connection, no relationship between First Amendment rights and pretrial release. Here, there's no relationship between a jury trial or a bench trial and telephonic testimony. The law treats juries and judges the same in terms of their ability to make credibility determinations. The standards of appellate review are the same for credibility determinations, whether it's a judge making those determinations or a jury. The rules of civil procedure have the same rules for presenting witness testimony, whether it's a bench trial or a jury trial. And in fact, the premise of the Seventh Amendment is that juries are better at making credibility determinations or that the preferred avenue for credibility determinations is a jury, the Sixth Amendment as well, for that matter. So there just was no reason for this condition that the judge placed on telephonic testimony, even if the judge didn't have to give that benefit. There was no reason for the condition that the judge placed that then caused Mr. Palmer to supposedly waive his Sixth Amendment — his Seventh Amendment rights. Kagan. If you look at it a little differently, if we agreed with you in principle that there was this constitutional conundrum, why isn't it harmless error in this case? Okay. For three reasons. I see that I'm running out of time, but let me try to answer quickly. First of all, it was not harmless because Mr. Palmer had enough evidence to support a jury verdict of excessive force. The standard is whether a directed verdict could have been entered if it had been a jury trial, and that wouldn't have been appropriate here. Mr. Palmer testified that he was restrained and still was being beaten in both of the incidents, that he was — in the first incident, they had him down and he was on the ground and they were holding him, and yet they were still beating him. In the second incident, that he was handcuffed the entire time and still was being beaten. In the second incident, there was also testimony from an eyewitness, Mr. Halbert, that confirmed that he was in handcuffs and being beaten with a can of pepper spray hitting his head. If he were already restrained and was being beaten, then that is under the standard of Hudson v. McMillan. There's — he wasn't — it wasn't to get control of him. It was — it was injury that was not — it was malicious injury, not a good-faith effort to maintain or restore discipline. Is that a sufficient answer to your question? I could keep going, but I see that I'm running out of time. Well, you know, it's — whether it's sufficient or not is not so much important. I don't want to be in the position of Judge Yeltsin and Mr. Palmer here of trading things off. So the question is, I mean, do you feel — have you answered sufficiently in your view? Yes, I — All right. Then do you want to save the remainder of your time? I'd like to save the remainder of my time. Good morning. May it please the Court, I'm Julianne Mosler from the California Office of the Attorney General here on behalf of Defendant's Appellees. Maybe we can, since we've sort of ended with harmless error, maybe we can just go into that really quickly. You didn't brief harmless error in this, so is it your position that Palmer's Seventh Amendment right would be — the violation would be — if we find that, would it be prejudicial, or you didn't make a harmless error argument in your — I didn't discuss harmless error because in the context of this case, the Court really never made an offer that would have violated the doctrine of unconstitutional conditions. But that — but what if we — but what if we found that? If you found that she had made the offer that violated the doctrine, you would have to find that it was harmless error because on the day that she made the offer, Mr. Palmer rejected it and insisted on his jury right, and everybody went away believing that they were going to have a jury trial in the morning. And then it was Mr. Palmer the next morning who brought the subject up again. Well, I guess I'm hearing — I don't want to make everyone's argument, but I'm hearing that there was an error in the evidence that was presented at the trial, whether it would be harmless, assuming — And whereas you're now talking about whether it was voluntary waiver or not, I think we're mixing and matching. Those are — those are two different things. So your question has to do with — Well, when there's something that's harmless, you analyze the evidence at trial, and you say, well, even if it was error to extract this waiver out of him and it was an unconstitutional condition, then you look at the trial and say — and I think the argument was that the government couldn't have got a directed verdict here, and I don't believe that the government made a motion for a directed verdict at the bench trial. Am I correct on that? That's right. All right. And so she's saying that there was — so we can't — you know, you can't show that it was harmless error, requiring him to go ahead and having telephonic witnesses as opposed to live witnesses and all of that. Well, I don't know that this is necessarily in the record, but the way that the witnesses were presented because of the telephonic testimony, both cases were sort of going at the same time. So there really was no point at the end of Plaintiff's case where defendants could move for a directed verdict. But if they had, the evidence that had been adduced at that point, it's not clear that — Well, you can — you can all — now, that's not exactly true. I know that there was an — that Mr. Palmer, once again, was allowed an opportunity because he hadn't subpoenaed someone, was allowed to, out of order, use one of the government — a witness that he wanted that the government had. But you — you know, the way that that's handled as a trial matter is that you say, okay, I'm not going to object to letting him do that and going out of order. But still, at the end of the day, I'm going to make this motion at the end of what would be his case and make a motion for a directed verdict. Well, his telephonic witnesses came up the next day. And so it really wasn't — there wasn't a clean break in his — in his case. It really was sort of your witness, our witness, your witness, our witness. And there wasn't a definite end to his case where then the defendants would move forward with their case. So there was — at the end of the day, there wasn't really an opportunity for a motion for a directed verdict. All right. So what I'm — what I'm taking out of all this is you're not making a really strong harmless error argument here. What I'm taking out of all of this is you either win or lose on the voluntariness. Is that your position? That's our — that's our position, yes. That's the defendant's position. And if you look at — if the court examines the discussion that was undertaken at the pretrial conference the day before the trial, I think you will find that the court actually never even made an offer to Mr. Palmer that would have violated the doctrine of nonconstitutional conditions. What had happened was Mr. Palmer came in and he announced to the court that he had been — or that his one inmate witness was not going to come voluntarily, and he asked if that witness could appear by phone. The court then explained that it's not a good thing to have telephonic witnesses giving testimony in front of a jury because a jury has a right to see the witnesses giving testimony. At that point, it was defendant's counsel who asked if Mr. Palmer was interested in waiving his jury. And so in responding to the defendant's counsel's question, that was when the court looked at Mr. Palmer and said, well, I don't want to pressure you, but if you — if it's a jury trial — or if you wanted to have a bench trial, I could listen to that testimony. She was willing to — as if she were going to be a fact finder, she was willing to accommodate him by waiving her right to have the witnesses present in trial. She was a — Kagan. The judge is the fact finder. The judge doesn't hold constitutional rights like the defendant, isn't it? The fact is, what she was saying is, if you waive your right to a jury trial, then I will be the fact finder and I will listen to your witnesses via telephone, correct? That is what she was saying. And so what is the — what is the rational relation, if any, between the judge listening to the telephonic witnesses and the jury? She was not willing to handicap the jury by — by allowing Mr. Palmer to present telephonic testimony where the — where the jury could not observe the witnesses. But isn't — you know, isn't our jurisprudence that the judge is the same as the jury for purposes of acting as a fact finder in a criminal case? Well, that's true. This was a civil case, but at — But what's the difference? She's still — she did not want to handicap the jury. So she was — if she was going to act as a fact finder, she was willing to — to allow the telephonic testimony where she wouldn't be able to observe the witnesses.  Well, here's the — here's the argument. She's one person. She knows her mind, whether that — how much that would affect her. A jury's 12 people. And making that decision for 12 people is different than making that decision for yourself. But the role of a judge in a bench trial is not any different than the role of 12 jurors in terms of being the fact finder. And then you have the additional. So — Well, that — that's true. The roles of fact finder would be the same, but again, she didn't want to handicap the jury by waiving their — their ability to see the witnesses. Well, that's not what the problem was. She basically says, look, if you want to — if you want to skip the jury, I'll allow telephonic testimony. That's the bottom line, correct? Yes. So — and in order to do that, he has to waive his right to a jury trial, correct? That's right. And what is the rational relationship between telephonic testimony at a jury trial and a bench trial? And that's what I'm still searching for from the government. Well, the relationship is still the fact finder's ability to observe the witnesses. And like I said, she wasn't willing to handicap the jury. And you keep saying she's not willing to handicap the jury. You know, we're not going to get anywhere if you keep repeating that mantra. From a legal standpoint, what's the difference, if any? If you have a jury listening to telephonic testimony and a judge listening to telephonic testimony, a decision has to be made, whether it's on credibility, admissibility, et cetera. What is the relationship? Because you can't — you can't say, well, you can't have a jury trial unless you waive your telephonic testimony, but you can have me as the judge if you waive it. I mean, she's giving him kind of a Hobson's choice. And to do that, you need to have some kind of legitimate, rational or articulable link on that condition. And that's what I'm trying to understand. What's the government's position? Well, I'm not sure I'm going to be able to clear that up for you anymore. I don't think that — I think that the only — that the relationship was that she didn't want to waive the jury's ability to see the witnesses. But the rule applies both for a judge trial and a jury trial, right? I'm sorry? This rule applies both for a judge trial and a jury trial. Yes, it does. There's no difference in the language, and there's no case law which would suggest that, right? That's true. In fact, there is no case law that I could find that applied the doctrine of unconstitutional conditions to a jury trial waiver. The only case that was cited in the briefs that talked about a jury trial waiver was Corbett, where it was found that a plea bargain is appropriate. And it's the same thing here, where a criminal defendant makes a plea bargain, he's made a tactical decision to waive his jury. And that's the same thing that happened here. Mr. Palmer made a tactical decision to waive his jury because he thought he could get a better result without the jury in getting the — in getting the telephonic testimony of the three other witnesses that he wanted. And the — let's see. The Supreme Court has said that the doctrine of unconstitutional conditions is not a blanket prohibition against every government-imposed choice that encourages the waiver of a constitutional right. That's what happened here. Mr. Palmer made a tactical decision, just like the — just like the defendant in Solis, and now he's complaining that he didn't like the result of his tactical decision. But that doesn't give him — I'm sorry, I think I'm out of time. You may continue and finish. That doesn't give him grounds for an appeal. And defendants would ask that the judgment be affirmed. Thank you. Thank you. The defendants have now made clear, I believe, that they have waived the harmless error argument. That's consistent with this Court's holding in U.S. v. Vallejo that if defendants don't raise harmless error, that they have waived it. I also wanted to just note one other thing, which is that there are cases that say that it's an unconstitutional condition to condition — Well, what authority can you — what — cite me to authority outside the takings context that would suggest that the district court's actions rose to the level of coercion that we have otherwise found unconstitutional? Do we have a case on point on that? There are cases that talk about waiver of a jury right being unconstitutional because of coercion, but I think — I think the — what was at stake was more than what was at stake here. United States v. Jackson held unconstitutional the Federal Kidnapping Act because the death penalty could be given after a jury trial but not after a guilty plea, and the Supreme Court held that to be unconstitutional. I think, fairly, I guess I would have to say that that's a bigger stake or more coercion than is at issue here. But I think the unconstitutional conditions doctrine really turns on germaneness and not on coercion always. Some of the cases turn on coercion, but many of them turn on germaneness. As Your Honor's dissent in Scott discussed, waiver of First Amendment rights as a condition to pretrial release would not be constitutional because there's no germaneness, there's no relatedness. There was no discussion in that case in the majority or the dissent about whether that was coercion. Well, anyone knows that stunned jury trials and bench trials, they aren't exactly the same, even though they do have the same rights. And judges are more experienced at judging people than are, you know, judges do it every day as opposed to juries that you pick people essentially off the street that may do it at one point in their existence. And a judge knows, you know, his or her mind in relative to the type of things that affect them. And a judge can say, well, you know, I don't really need to see the people face-to-face as opposed to a jury might because they come from a different place in life and a different experience and there's 12 of them as opposed to me. I know my mind and I know that, you know, I can fairly listen to telephonic testimony. Isn't that a, I mean? The law treats judges as better able to decide relevance, to decide issues of law, but the law does not treat judges as better able to make credibility determinations than juries. That's why we have a Sixth Amendment and Seventh Amendment right to jury trials. And although judges do make credibility determinations in their day-to-day lives, so do regular people. We constantly are evaluating whether people are telling us the truth. And there's just no, there's no reason to think that legal training makes you better at assessing whether someone is telling the truth. That's not a legal determination. It's a determination of credibility that we all make every day. And the law just makes no distinction between judges and juries. What about the fact that the defense, well, the government would not agree to letting in telephonic testimony in the jury trial? And the government would agree. The government proffers that saying, you know, hey, if you want to go that way, we're willing to waive that. And so the facts are a little bit, you know, there's a little bit different factual predicate in that situation. Well, the, because even if the court had, you know, I mean, I think you've conceded that the court would be perfectly within its rights to say no telephonic testimony. That's right. But the district court, well, there are two things that happened. The district court said that as a matter of law, the jury had a right that the district court didn't have. And that was not true. So that's one thing that even though the government, the government did say we'd be willing to waive the jury trial, but the judge added on and made an incorrect statement of law that presented the situation as a choice. It was really the judge that said you could do this in a bench trial, but not in a jury trial. I think I should also add that the government, it was the government either way. So for purposes of state action or unconstitutional conditions, I don't think it matters whether it was the judge or the government. In the Scott case, it was a combination of, I think, the government and the judge that placed those conditions on pretrial release. I'm not sure it matters whether it's the defendant or the, or sorry, in Scott it was the prosecution. But I'm not sure it matters whether it's the government as a litigator or the judge who places the condition. I think we have your argument in mind unless, other questions? No. The case of Palmer versus Valdez is submitted.
judges: McKeown, Callahan, Siler